UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

                          Plaintiff,        **MEMORANDUM AND ORDER**

 - against -                      2:19-cv-2879 (DRH) (AKT)

AMANDA DIMUZIO, FAITH DIMUZIO,
A.G.D., a minor, and J.A.D., a minor,

                          Defendants.
---------------------------------------------------------------X

**APPEARANCES**

**D'ARCAMBAL LEVINE & OUSLEY LLP**
Attorneys for The Prudential Insurance Company of America
40 Fulton Street, Suite 1005
New York, NY 10038
By:    Deirdre Ann Connolly, Esq.

**RUSSO, KARL, WIDMAIER & CORDANO, PLLC**
Attorneys for Amanda DiMuzio
400 Town Line Road, Suite 170
Hauppauge, NY 11788
By:    Christopher P. Gerace, Esq.
        Joseph Lawrence Indusi, Esq.

**MITEV LAW FIRM, PC**
Attorneys for Defendant Faith DiMuzio
1214 N. Country Road
Stony Brook, NY 11790
By:    Vesselin Mitev, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff The Prudential Insurance Company of America ("Prudential")

brought this interpleader action against Defendants Amanda DiMuzio ("Amanda"),

Faith DiMuzio ("Faith," and with Amanda, the "Claimants"), and A.G.D. and J.A.D.,

both minors (the "Children"), requesting the Court determine who is entitled to the death benefit of a life insurance policy Prudential issued to Decedent John A. DiMuzio ("Decedent"). Presently before the Court is Amanda's motion for summary judgment and Faith's cross-motion for summary judgment, each brought under Federal Rule of Civil Procedure 56. For the reasons stated below, both motions are denied without prejudice to pursuing their application in state court. The Court dismisses the action, as either the domestic relations exception to subject-matter jurisdiction applies, or, assuming *arguendo* that the Court has jurisdiction, the domestic relations abstention doctrine calls for further litigation to proceed in state court.

## BACKGROUND

The following facts, taken from the parties' Local Rule 56.1 statements, are undisputed unless otherwise noted. (*See* Def. Amanda's Statement of Undisputed Facts [DE 46-1] ("Amanda 56.1"); Def. Faith Counter-Statement Pursuant to Local Civil Rule 56.1 [DE 47-3] ("Faith 56.1"); Def. Amanda Counter-Statement Pursuant to Local Civil Rule 56.1 [DE 47-10] ("Amanda Counter 56.1")).

After ten years of marriage, Decedent and Faith entered into a Separation Agreement containing several provisions for the benefit of their Children: *e.g.*, child support, college expenses, and life insurance. (Amanda 56.1 ¶ 3; *see* Separation Agreement arts. IX, XII, XV[1] ("Sep. Agmt."), Ex. A [DE 46-4] to Declaration of Christopher P. Gerace ("Gerace Decl.") [DE 46-3]). The Child Support provision

---

[1]     The Separation Agreement has two Article XVs. *Compare* Sep. Agmt. at 20 (Real Property), *with id.* at 21 (Life Insurance). Unless otherwise specified, all citations to Article XV herein refer to the Life Insurance article.

required Decedent to pay Faith a sum certain twice-a-month to cover, *inter alia* and as relevant here, payment for the Children's "extra-curricular activities." (Sep. Agmt. art. IX). The College Expenses provision requires Decedent to pay a portion of "the college expense of the [C]hildren," including "tuition, books, fees, lodging, and reasonable travel." (*Id.* art. XII).

The Separation Agreement's Life Insurance provision required Decedent to obtain life insurance with "an aggregate death benefit of at least Nine Hundred Thousand ($900,000.00) Dollars . . . with the Children designated as irrevocable beneficiar[ies] and [Faith] designated as trustee for the benefit of the [C]hildren." (*Id.* art. XV). The provision further states,

> The [Decedent] may annually reduce the policy benefits to an amount equal to that for which he remains obligated for child and spousal support pursuant to the agreement.

(*Id.*). Through his employer, Decedent obtained group life insurance coverage with Prudential. (Faith 56.1 ¶ 11). Unfortunately, neither a copy of the group policy nor any of its terms have been provided to the Court. Likewise, nothing in the record addresses (i) when Decedent first obtained coverage, (ii) whether the group policy death benefit equaled or exceeded $900,000.00, (iii) whether the group policy death benefit was ever reduced and, if so, by how much, (iv) whether Decedent named the Children irrevocable beneficiaries or Faith as trustee for the benefit of the Children to the policy, nor (v) if Prudential required a beneficiary's consent to change the terms in or beneficiaries of the group policy.

Decedent officially divorced Faith on June 3, 2015, (*see* Amanda 56.1 ¶ 9), and the Judgment of Divorce incorporated their Separation Agreement's terms by reference, (Faith 56.1 ¶¶ 9–10). Decedent married Amanda later that year.

On August 20, 2018, Decedent applied to convert his group life insurance policy into an individual life insurance policy. (Decedent's Application for Conversion of Group Life Insurance ("Life Ins. Conversion App."), Ex. B at 7–12 [DE 46-5] to Gerace Decl.). The Claimants dispute the issue of whether Decedent sought Faith's consent or court permission before applying for the policy conversion. (Amanda Counter 56.1 ¶¶ 13–15). Prudential approved Decedent's conversion application on August 30, 2018. (Amanda 56.1 ¶ 10; *see* Ex. 2 at 12 [DE 47-6] to Declaration of Vess Mitev ("Mitev Decl.") [DE 47-2]). The individual policy has a death benefit of $1,038,000.00, with A.G.D. designated as a 12% beneficiary, J.A.D. as a 12% beneficiary, and Amanda as a 76% beneficiary. (Life Ins. Conversion App.). None of the three is an irrevocable beneficiary. (*See id.*; Faith 56.1 ¶ 12).

Decedent passed away on December 12, 2018. (Amanda 56.1 ¶ 12). Amanda and Faith, the latter as trustee for the benefit of the Children, each filed a claim with Prudential for Decedent's death benefit. (Ex 3 at 335–42, 388–95 [DE 47-7] to Mitev Decl.). Prudential commenced this interpleader action on May 16, 2019, (Amanda 56.1 ¶ 13), and deposited $1,038,646.76 with the Court on August 25, 2020, (Amanda Counter 56.1 ¶ 21). Amanda and Faith both moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 and filed papers with the Court on June 1, 2021. [DEs 46, 47].

On August 27, 2021, this Court directed the parties to address its exercise of jurisdiction over the action in light of the (i) domestic relations exception to federal subject-matter jurisdiction and the (ii) domestic relations abstention doctrine.  (Order to Show Cause [DE 52] (citing *Deem v. DiMella-Deem*, 941 F.3d 618 (2d Cir. 2019)).  Both Claimants are of the view that the Court has subject-matter jurisdiction and that the Court should not abstain from the exercise thereof.  [DE 54] ("Amanda OTSC Ltr."); [DE 55] ("Faith OTSC Ltr.").

## DISCUSSION

Prudential brings this interpleader action pursuant to Federal Rule of Civil Procedure 22.  "Historically, a bill of interpleader was an equitable device whose purpose was the avoidance of the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing." *Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995) (internal quotation marks omitted).  Rule 22—"Rule Interpleader"—serves the same purpose in the modern day, thereby "protect[ing] a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund."  *Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993).  An interpleader action proceeds in two steps, only the first of which is relevant here.

At the first step, "the court determines whether the interpleader action is appropriate and the stakeholder is entitled to bring the action."  *Union Cent. Life Ins. Co. v. Berger*, 2012 WL 4217795, at *6 (S.D.N.Y. Sept. 20, 2012), *aff'd*, 612 Fed. App'x 47 (2d Cir. 2015).  Interpleader actions are appropriate if, *inter alia*, "the plaintiff has

satisfied the jurisdictional requirements for bringing the action," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 318 (S.D.N.Y. 2014), as Rule Interpleader "does not provide an independent basis for jurisdiction," *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 338 F.3d 119, 124 (2d Cir. 2003).  Interpleader is inappropriate where a court lacks subject-matter jurisdiction because, in the absence of such jurisdiction, the court has no power to hear the action and must dismiss it. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *e.g.*, *Todtman, Young, Tunick, Nachamine, Hendler & Spizz, P.C. v. Slotnik*, 1997 WL 148711 (S.D.N.Y. Mar. 28, 1997).

## I.    Subject-Matter Jurisdiction

The parties invoke diversity of citizenship as the basis for the Court's subject-matter jurisdiction.  Compl. at 2 ¶ 1 [DE 1].[2]  "[A] federal court has diversity jurisdiction over an interpleader action brought pursuant to [Rule 22] so long as the stakeholder," here Prudential, "is diverse from every claimant" and the disputed fund exceeds the statutory amount-in-controversy threshold.  *Franceskin v. Credit Suisse*, 214 F.3d 253, 259 (2d Cir. 2000) (citing 28 U.S.C. § 1332).  This action satisfies those requirements.  Stakeholder Prudential is an insurance company organized and existing under New Jersey law with a principal place of business in New Jersey;

---

[2]    This citation identifies the page number because the Complaint has a Paragraph 1 on both the first and second page.

Amanda, Faith, A.G.D. and J.A.D. are New York citizens.[3]   Compl. at 1 ¶¶ 1–5; *id.* at

2 ¶ 1.   The amount in controversy exceeds $75,000.   *Id.* ¶ 8.

Notwithstanding diversity, however, this action involves interpretation of a

Separation Agreement whose terms are incorporated by reference into a Judgment of

Divorce.   As a result, it may implicate the "domestic relations exception" to

subject-matter jurisdiction.   *E.g.*, *U.S. Life Ins. Co. v. Marshall*, 2014 WL 2040389, at

*1 (D. Conn. May 16, 2014).   The domestic relations exception, also known as the

matrimonial exception, "divests the federal courts of power to issue divorce, alimony,

and child custody decrees."   *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).   "The

exception is a limited one, applying only to the *issuance* of one of these specific

decrees."   *Ranney v. Bauza*, 2011 WL 4056896, at *2 (S.D.N.Y. Aug. 31, 2011)

(Sullivan, J.) (emphasis in original) (citing *Ankenbrandt*, 504 U.S. at 704); *see Am.*

*Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) ("[T]he scope of th[e] matrimonial

exception to federal jurisdiction is rather narrowly confined.").

At the Court's direction, the parties filed letters addressing whether the

domestic relations exception applies here.   The parties contend it does not.   They

agree that "[t]he heart of this action concerns the interpretation of a contractual

---

[3]      Amanda is "currently a resident of Alabama."   Amanda OTSC Ltr. at 3.
"[R]esidence alone is insufficient to establish domicile for jurisdictional purposes,"
and, in any event, "the relevant domicile is the parties' domicile at the time the
complaint was filed."   *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53–54 (2d
Cir. 2019).   Amanda was domiciled in New York at the time the Complaint was filed.
Answer of Amanda DiMuzio ¶ 2 [DE 12] (admitting allegation of New York
citizenship).

provision."  Amanda OTSC Ltr. at 1; *see* Faith OTSC Ltr. ("[T]he matter involves . . . a breach-of-contract (and its related torts) analysis.").

District courts in the Second Circuit have not reached a consensus on whether subject-matter jurisdiction exists over a breach-of-contract action arising from a divorced couple's separation agreement.  *Petersen v. Petersen*, 640 F. Supp. 719, 720 (S.D.N.Y. 1986) (Leval, J.) ("[S]everal recent cases in this district have held that disputes arising out of separation agreements fall within the [domestic relations] exception and thus outside federal jurisdiction.").  Some have held there is jurisdiction.  *E.g.*, *Collins v. Landau*, 2010 WL 5069907, at *4 (D. Conn. Dec. 3, 2010) (breach-of-contract action within the court's subject-matter jurisdiction because "it does not directly involve issuance of a divorce, alimony, or child custody decree," even if it "arises in the context of a state domestic-relations action" and "reference to family law and procedures may be implicated"); *Schottenstein v. Schottenstein*, 2004 WL 2534155, at *5 (S.D.N.Y. Nov. 8, 2004) ("[C]laims arising in the domestic relations context, but sounding in tort or contract, or alleging civil rights violations[,] ordinarily fall outside the ambit of the domestic relations exception.").  Others have reached the opposite conclusion.  *E.g.*, *Weiss v. Weiss*, 375 F. Supp. 2d 10, 15 (D. Conn. 2005) ("[F]ederal courts may not exercise jurisdiction over contract claims between former spouses arising out of separation agreements.").

At least one district court has also held that the domestic relations exception is triggered in actions involving child support, an issue at play here.  *E.g.*, *Durr v. Mobley*, 1993 WL 118486, at *2 (S.D.N.Y. Apr. 12, 1993) (Sotomayor, J.) ("Durr's claim

falls within the ambit of cases excluded by *Ankenbrandt* as his complaint involves claims of child support and child custody—two areas that are at the core of the domestic relations exception.").

The Court believes the domestic relations exception to subject-matter jurisdiction deprives it of the power to hear the action. But "[e]ven if there were jurisdiction, this case presents a particularly appropriate instance for federal abstention." *Petersen*, 640 F. Supp. at 721; *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 506 (S.D.N.Y. 2004) ("The case therefore probably does not come within the domestic relations exception. Nevertheless, the case is 'on the verge' of a matrimonial dispute and in any case a paradigmatic one for abstention.").

## II.  Abstention

Under the "domestic relations abstention" doctrine, a district court "should abstain from adjudicating matrimonial issues or issues 'on the verge' of being matrimonial in nature . . . so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc.*, 905 F.2d at 14; *Bossom v. Bossom*, 551 F.2d 474, 475 (2d Cir. 1976). The Second Circuit has noted that district courts in the interpleader context may "properly [] abstain" on this basis. *Am. Airlines, Inc.*, 905 F.2d at 15.

The Court's Order to Show Cause directed the parties to address this doctrine as well. The Court's task, in Faith's view, is to determine whether or not Decedent's addition of Amanda as 76% beneficiary of the death benefit "was allowable, prohibited, void, or something else," which "does not involve delving into domestic

relations matters." Faith OTSC at 1. Amanda contends the Claimants "ask the Court to decide the meaning of the Life Insurance provision in [the] Separation Agreement, which is purely a question of contractual interpretation separate and apart from any domestic-relations issue." Amanda OTSC Ltr. at 2. The case, in Amanda's view, "transform[s] into a quasi-domestic relations issue [only] if the Court finds that" the Life Insurance provision entitles Faith "only to th[e] portion of the [death benefit] that equals what the Decedent owed in child support at the time of his death." *Id.* at 2–3.

The Court agrees with the Claimants' characterization of the case—that its outcome depends how the Court interprets the Separation Agreement—but finds that construing the case in this manner supports, not diminishes, the propriety of abstaining. The United States District Court for the District of Massachusetts came to the same conclusion in a case with near-identical facts. *See Sav. Bank Life Ins. Co. of Massachusetts v. Fleming* ("*Fleming*"), 2016 WL 7197370 (D. Mass. Dec. 9, 2016). *Fleming*, an interpleader action, concerned a decedent's alleged violation of a separation agreement requiring him to maintain a life insurance policy naming his two children as beneficiaries. *Id.* at *1. As here, the decedent remarried and, before his death, designated his second wife as the beneficiary of his policy. *Id.* His children and second wife each "contend[ed] that they [were] the rightful beneficiaries of the death benefit." *Id.* The *Fleming* Court dismissed the action given its domestic relations nature:

> The dispute between the claimants in this action turns upon the validity and meaning of the 1986 separation agreement, which appears to have

been incorporated into the Probate Court's judgment of divorce. Whether [the second wife] or [the children] are entitled to the proceeds from the [life insurance policy] depends on whether the [decedent] had the right to change the beneficiaries of that policy. That question, in turn, depends upon the interpretation of the separation agreement and Probate Court order. This is not, therefore, a simple contract dispute. It is a dispute over the proper distribution of marital property subsequent to a divorce decree.

*Id.* at *3.[4]   Lacking the ability to "grant or deny the requested relief without construing (and perhaps modifying) a state Probate Court decree," the court dismissed the case. *Id.* at *4.

Indeed, the Second Circuit has "found 'particularly strong' reasons for abstaining in a case involving a divorced couple's separation agreement, in part because New York courts [have] a continuing power to modify or enforce the agreement." *Minot v. Eckardt-Minot*, 13 F.3d 590, 594–95 (2d Cir. 1994) (quoting *Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 32 (2d Cir. 1986), *overruled on other grounds Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 786 (2d Cir. 2002)). In *Fay*, for example, a father alleged his ex-wife breached a separation agreement provision entitling him to certain of their children's education records; the federal court's need to abstain was "particular strong" because "effective relief" for his claims would oblige it "to declare which [records] [were] essential to [his] exercise of the right to control his children's educational destiny" – a matter better suited for state court. 802 F.2d

---

[4]      The *Fleming* Court, bound by First Circuit precedent, dismissed the case for lack of subject-matter jurisdiction due to the domestic relations exception. *Fleming*, 2016 WL 7197370, at *3 (quoting *Irish v. Irish*, 842 F.3d 736, 741 (1st Cir. 2016)). When read with Second Circuit precedent in mind, its reasoning fits the domestic relations abstention doctrine analysis. *See Deem v. DiMella-Deem*, 941 F.3d at 621–25. Either way, the *Fleming* Court's reasoning supports dismissal here.

at 31–32.  That "educational destiny" concern exists here: as one example, the parties dispute whether Decedent's remaining child support obligation includes college expenses.  Faith Mem. at 16; Amanda Mem. at 8–9 (omitting such amounts from her calculation).

Even if the Court accepts either Claimant's position so far as to consider the merits of one or both of the motions for summary judgment—"on the theory that if [one] motion could be granted then the reasons prompting [the Court's] abstention would be inapplicable"—the presence of genuine questions of material fact requires the Court to deny both motions.  *See Brenhouse v. Bloch*, 418 F. Supp. 412, 413 (S.D.N.Y. 1976).

There are genuine questions of material fact surrounding Decedent's conversion of his group life insurance policy into an individual policy.  Faith contends Decedent breached by "unilaterally remov[ing] the [C]hildren as sole 'irrevocable' beneficiar[ies]" without her consent.[5]  Faith Mem. at 8.  Amanda contends the Children's designation is immaterial and, in any event, Faith consented to Decedent's policy conversion.  Amanda Counter 56.1 ¶¶ 13–15.  The record is deficient with respect to both issues.  There is no copy of the group policy, leaving the court to

---

[5]      The Judgment of Divorce incorporates by reference the Separation Agreement, meaning a breach of the latter is a breach of the former.  "[C]laims verge[] on being matrimonial in nature where a plaintiff [seeks] relief related to the alleged violation of a state court order distributing marital property."  *Ranney*, 2011 WL 4056896, at *3; *Hamilton v. Hamilton-Grinols*, 363 Fed. App'x 767, 769 (2d Cir. 2010) (grounding relief in an ex-wife's "purported violation of . . . a New York state court Final Judgement of Divorce," which "provide[d] for child custody arrangements and child support," was "matrimonial in nature").

speculate about the Children's designation therein.   No affidavit, deposition transcript, or documentary evidence supports or refutes either party's view on Faith's consent.

Another genuine issue of fact exists as a result of the Separation Agreement's ambiguity on whether the Decedent could permissibly "reduce the policy benefits" by decreasing the Children's percentage entitlement to the benefits.[6]   Faith says Decedent could not, understanding "policy benefits" to mean the full payout of the death benefit, which technically is not reduced and which presently exceeds the minimum $900,000.00 required by the Separation Agreement.   Faith Mem. at 13. Faith's view may elevate form over substance.   Presumably, the Separation Agreement does not prohibit Decedent from simultaneously (i) reducing the death benefit amount without changing the Children's percentage entitlement, and (ii) taking out another life insurance policy with a death benefit equal to the amount by which the other was reduced, with its payout going to a never-before-named beneficiary.   By contrast, Amanda understands "policy benefits" according its purported purpose—"to ensure that [the Children] will receive economic support for payments that would have been due had the payor spouse survived"—and that Decedent's reduction of the Children's percentage entitlement effectuates that

---

[6]   At least one district court has found a separation agreement's silence on an issue sufficient to justify its application of the domestic relations abstention.   *E.g.*, *Casaburro v. Daher*, 569 F. Supp. 835, 836 (S.D.N.Y. 1983) ("The separation agreement, although it provides for visitation rights, is silent on the subject of Daher's right to choose her residence, and the federal courts have little experience with the state policies and precedents that govern the construction of such agreements in these circumstances.").

intention.  Amanda Mem. at 6.  Amanda's view is problematic because her proposed purpose does not dovetail with the Separation Agreement's plain language.  Decedent had the option—not the obligation—to reduce the death benefit.  The amount in outstanding child support is the contractual floor below which Decedent could not reduce the death benefit; it is not the ceiling, nor necessarily the present value, of the Children's interest in the death benefit.

An additional genuine question of material fact concerns the calculation of Decedent's outstanding child support.[7]  Faith argues that this amount is "fluid and impossible to calculate," Faith Mem. at 16, but if that's true, Decedent could never "reduce the policy benefits to an amount equal to that for which he remains obligated for child and spousal support" because that amount is indeterminable.  Amanda's position is not immune to challenge either.  Her calculation of Decedent's remaining child support obligation fails to include expenditures for, *inter alia*, "extra-curricular activities," which are expressly listed in the Child Support provision, and college expenses.  *See* Amanda Mem. at 8–9

The "mere statement of these issues makes evident that any attempts to resolve them would involve" this Court "in the very type of controversy concerning family status from which" the Second Circuit instructs it to abstain.  *Brenhouse*, 418 F. Supp. at 413.

---

[7]     "[C]alculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing."  *Simmons v. NYS Dep't of Soc. Servs.*, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019).

Finally, no obstacle prevents the case's full and fair determination in state court.   The Second Circuit itself "see[s] no obstacle to determination of the matrimonial issues by way of a state court action.   New York law authorizes [a stakeholder] to bring an interpleader action in New York state courts." *Am. Airlines, Inc.*, 905 F.2d at 14–15 (citing N.Y. C.P.L.R. 1006).

To the extent the present decision will delay a resolution of the case, the domestic relations abstention doctrine stems from "the greater interest and expertise of state courts in this field" and not convenience of the parties.   *Am. Airlines, Inc.*, 905 F.2d at 14.   True, in other abstention contexts, district courts consider how far along the federal litigation has progressed.   *E.g.*, *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989) (affirming district court's decision not to exercise jurisdiction even though "more discovery has occurred to date in the federal suit").   But even if considered here, that factor does not weigh so heavily in favor of exercising jurisdiction.   The parties will likely need to conduct further discovery and brief summary judgment all over again in order to address the many genuine questions of material fact noted above.   That is, this federal action is not so developed such that a blank slate in state court imposes undue prejudice.

Assuming *arguendo* that the Court has subject-matter jurisdiction, the domestic relations issues at play nevertheless counsel in favor of abstaining.

## III.   Concluding Thoughts

The Court granted a joint motion for interpleader deposit on August 25, 2020, permitting Prudential to place the disputed fund into the Court's hands.   [DE 36].

Until the Court investigated its jurisdiction, however, no party had raised the domestic relations exception and abstention doctrines. Because the Court has decided to dismiss the action, the Court will vacate its August 25, 2020 Order and return the money to Prudential.

In dismissing, the Court does not endorse Amanda's view that Faith and the Children's only recourse is to proceed "against Decedent's estate in Surrogate's Court." Amanda Mem. at 9–10. Article XV(a) of the Separation Agreement provides that if Decedent "failed to maintain life insurance coverage as required by [the Life Insurance provision], then [Faith] shall be entitled to a charge against [Decedent's] estate . . . for any amount of insurance not maintained by" Decedent. Sep. Agmt. art. XV(a). As a matter of common usage, that Faith "shall be entitled" to relief in Surrogate's Court does not mean that Faith "must" get relief from the Surrogate's Court. "Although the word 'shall' is a mandatory term, here it mandates nothing more than that the [Surrogate's Court] ha[s] jurisdiction." *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994) (internal quotation marks omitted). This "language *empowers* the New York" Surrogate's Court to adjudicate this matter, but it does not indicate that the Surrogate's Court "is the *exclusive* or the only appropriate forum where the case may be heard." *Heyco, Inc. v. Heyman*, 636 F. Supp. 1545, 1548 (S.D.N.Y. 1986) (emphasis in original) (quoting *Credit Alliance Corp. v. Crook*, 567 F. Supp. 1462, 1465 (S.D.N.Y. 1983)).

## CONCLUSION

For the reasons discussed above, Amanda's motion for summary judgment is denied and Faith's cross-motion for summary judgment is denied, both without prejudice to pursuing the application in state court. Under either the domestic relations exception to subject-matter jurisdiction or, assuming *arguendo* that the Court has jurisdiction, the domestic relations abstention doctrine, the Court dismisses the case. As a consequence of doing so, the Court vacates its Order dated August 25, 2020. On or before January 7, 2022, Prudential is directed to provide the Court with a Proposed Order directing the Clerk of Court to return the deposited amount of $1,038,646.76 plus any accrued interest to Prudential. The Clerk of Court is respectfully directed to terminate the action without prejudice.

**SO ORDERED.**

Dated: Central Islip, New York
        December 6, 2021

s/ Denis R. Hurley
Denis R. Hurley
United States District Judge